STATE OF NEBRASKA, EX REL. COUNTY COMMISSIONERS OF BROWN COUNTY, v. C. F. BOYD.

FILED OCTOBER 7, 1896.    No. 6080.

1. **Mandamus:** COUNTY CLERK: TURNING OVER FUNDS. A *mandamus* will issue even after the expiration of the term of office of a county clerk to compel him to perform the duty of reporting all the fees of his office, also to pay into the treasury of the county any excess above the amount he was entitled by law to retain.

2. ———: STATUTE OF LIMITATIONS. "A proceeding by *mandamus* is barred by the statute of limitations at the expiration of four years from the time the right to the writ accrued." (*State v. King*, 34 Neb., 196.)

3. **County Clerk:** EXCESSIVE FEES: MANDAMUS: TIME. The requirements of the law in regard to a fee book to be kept by the county clerk, and the reports of his fees, to be regularly made to the county board, combined with the provisions of the statute in respect to the amount to be charged in each instance as a fee, and the fact that what has been done by him for which a fee should be charged and collected appeared of record, are sufficient to charge the board with notice of any discrepancy between the amounts of the fees of the officer reported by him as collected and the true amounts; from which it follows that the right of action to enforce the duty of making a true report for any current year, and to pay any excess of fees into the county treasury, would accrue at the time the report was due, or made in an incomplete or defective form, and this would be the rule if the rendering of an incomplete or false report be considered in the nature of a fraud on the board, to which it must be presented.

4. **Limitation of Actions:** FRAUD. "An action for relief on the ground of fraud may be commenced at any time within four years after the discovery of the facts constituting the fraud, or of facts sufficient to put a person of ordinary intelligence and prudence on an inquiry, which, if pursued, would lead to such discovery." (*Gillespie v. Cooper*, 36 Neb., 775.)

ORIGINAL application for *mandamus* to compel the respondent to report and enter upon the county fee books the amount of fees earned by him as county clerk of Brown county, and pay the balance due the county into the treasury. *Writ denied.*

*J. S. Davisson, P. D. McAndrew,* and *C. H. Bane,* for relators.

*L. K. Alder* and *Munger & Courtright, contra.*

HARRISON, J.

In this, an application to this court for a writ of *mandamus,* the prayer of the petition filed reads as follows:

"Wherefore your relators, as the agents of the county of Brown, pray that a peremptory writ of *mandamus* issue to C. F. Boyd, as county clerk of Brown county, Nebraska, commanding him, the said respondent, for the years 1888 and 1889, to forthwith report and enter upon the respective fee books of said county all the fees so earned by him, the said C. F. Boyd, as county clerk and *ex officio* clerk of the district court of Brown county, Nebraska, for the years 1888 and 1889, and ending on January 7, 1890, including the fees not heretofore reported by said respondent, as set out in this petition; and that the said respondent be required and commanded to pay over the excess not heretofore reported by him, viz., fourteen hundred and twenty-two and 53-100 ($1,422.53) dollars, into the treasury of Brown county, and for the costs of this action."

The case was submitted on the following motion and stipulation:

"Comes now the respondent and moves the court for judgment dismissing this action, and for costs, and for reasons therefor presents that the pleadings and stipulation of facts filed herein show the following: (1) That this action is barred by the statute of limitations; (2) that respondent has duly entered on his fee book and duly accounted for each and every item of fees actually received or collected by him; (3) that all matters in controversy were each finally adjudicated before the board of county commissioners of Brown county and no appeal taken therefrom."

Among the defenses claimed by respondent to this action he presents most prominently three, as follows:

"First, that the statute of limitations has run against this action; second, a final adjudication before the board of county commissioners; third, the petition charges the respondent with all the fees earned, while respondent contends that he is only bound to account for those actually received."

Any one of these defenses, if decided by the court in favor of respondent, will be decisive, practically speaking, of the entire action; and for the purposes of having them passed upon by the court at the present time the parties hereto stipulate as follows:

"1. The pleadings filed in this case are made a part of this stipulation, and thè facts admitted by said pleadings are to be considered in connection with this stipulation of facts.

"2. It is admitted that respondent was the duly elected, qualified, and acting county clerk and *ex officio* clerk of the district court for the two-year term commencing January 7, 1888, and ending January 7, 1890.

"3. That no cause of action exists against respondent for the second year of his term, being from January 7, 1889, to January 7, 1890, for the reason that he did not receive or earn the minimum fees allowed him for said year.

"4. It is admitted that during the year 1891 plaintiff employed a person (claimed by relators and denied by respondent to have been an expert) to examine the records of the respondent's office for said official year of 1888; that said examiner made a report in July, 1891, showing a shortage in accounts of respondent for said year in the sum of $861.09; that said estimate of the shortage was based entirely on what the records show to have been earned, as figured upon his basis of charges, regardless of what was actually charged and collected.

"5. It is admitted that respondent faithfully accounted for all the fees entered upon his fee book.

24

"6. It is admitted that respondent at all times kept a fee book, and that said fee book, together with all other records of said office, was at all times open to the inspection of the board of county commissioners of Brown county, and all other persons whomsoever.

"7. It is admitted that at the end of each quarter of each official year the respondent presented a quarterly report of his fees to the board of county commissioners of said county, each of which reports corresponded with his fee book, and that each of said reports was by the said board of county commissioners, within a short time thereafter, examined and approved.

"8. It is admitted that on January 10, 1889, respondent made an annual report for said official year of 1888 to the board of county commissioners of said county, which report was as follows:

| | | |
|---|---:|---:|
| Receipts first quarter | $441 70 | |
| Receipts second quarter | 353 00 | |
| Receipts third quarter | 479 95 | |
| Receipts fourth quarter | 409 35 | |
| Receipts for abstracts | 162 44 | |
| Salary as clerk of board | 400 00 | |
| Making total receipts for the year | | $2,246 44 |
| Salary as register of deeds | $1,500 00 | |
| Making tax list 1888 | 341 70 | |
| Clerk hire | 665 35 | |
| | | 2,507 05 |
| Balance due for making tax lists | | $260 61 |

"That said report was on said day examined by the board of county commissioners, in regular session assembled, and by them approved; that on said day respondent filed a bill for the balance due him under said report of $260.61, which bill was, on January 22, 1889, by the county commissioners of said Brown county duly audited and allowed to respondent, and a warrant ordered drawn on the treasurer of said county for said sum in payment

of said balance due to respondent, and said warrant was so drawn and by the treasurer of said county paid to respondent; that no appeal from the allowance of said bill or from the allowance of said annual report, or from the allowance of any quarterly report for any quarter of said year, was ever taken.

"9. The respondent admits that the relators and their predecessors in office did not actually know until July, 1891, that respondent was only entering on his fee book the items of fees actually received, and that they obtained this information in July, 1891, from the report of the expert above mentioned. But it is admitted by both parties hereto that relators and their predecessors in office had the same opportunities for examination of the records by themselves, or by any one employed by them, at all times theretofore, and that respondent did not misrepresent or conceal such custom.

"10. It is admitted that respondent entered on his fee book and duly accounted for each and every item of fees actually collected or received for the official year of 1888.

"11. This stipulation is entered into for the sole and only purpose of forming a basis for a motion for judgment on the pleadings and this stipulation, to be filed by the respondent. If the court decides any one of the three propositions of law above mentioned in favor of respondent, the writ of *mandamus* is to be denied and cause dismissed at the cost of relators. If the court overrules said motion, the cause shall proceed to trial, and neither party shall be bound by any statement or admission contained in this stipulation."

The first question presented by this stipulation and motion is whether the cause of action is barred by the statute of limitations. It was stipulated that the respondent did not receive or earn, during the second year of his term of office, the minimum amount of fees which he would have been entitled by law to retain. (See paragraph 3, copy of stipulation herein.) It is the account of the fees of respondent as county clerk during the year 1888, and the

acts and omissions of the parties concerned, which we are now to examine and consider, and determine whether the present action arose in favor of the relators against respondent, and if so, when it accrued. A *mandamus* may be issued even after the expiration of the term of office of a county clerk to compel the performance of his duty of reporting all the fees of the office, and to pay into the treasury of the county any excess of such fees above the amount of which he was entitled by law to retain. (*State v. Shearer*, 29 Neb., 477.) It may be considered as settled that the action is a proper one, and we will turn to the question of when the right of action accrued.

In section 42 of chapter 28 of the Compiled Statutes it is provided that every county clerk whose fees shall, in the aggregate, exceed the sum of fifteen hundred dollars per annum, shall pay such excess into the treasury of the county in which they hold their respective offices. There are further provisions by which clerks and other officers are allowed a larger amount per annum in counties in which the population is more than a certain stated number; also, provisions are made for the allowance of deputies or assistants in certain cases; but we are not concerned with any except the first provision to which we have just alluded. By section 43 of the same chapter the duty is cast on each officer named in section 42 to make a report, under oath, to the board of county commissioners on the first Tuesday of January, April, July, and October of each year, which must show the different items of fees received during the time covered by each report, from whom, at what time and for what service, the total amount of fees received by the officer since the last prior report, and also a report showing the amount received for the current year. Section 44 is as follows: "Each of the officers named in section 1 of this act shall keep a book, which shall be provided by the county, and which shall be known as the fee book and shall be a part of the records of such office, and in which shall be entered each and every item of fees collected, showing in separate columns

the name of the party from whom received, the time of receiving the same, the amount received, and for what service the same was charged."

It is claimed by relators that the items of fees which were not entered by respondent in the fee book and shown by his reports were all items of which there should have been entries in the fee book during the year 1888. If so, then the right of relators to demand that they be so entered accrued not later than the time when the report was made for the current year, which presumably, and certainly to fulfill the intent of the law and the law-makers, would be made up from the fee book and show the account therein contained, either in full or in a condensed or abridged form. That the right to the action then accrued, and the action not having been commenced within four years from that time, was barred by the statute of limitations. In the case of *State v. King*, 34 Neb., 196, an action in which it was sought to obtain a writ of *mandamus* to compel the respondent, who had been treasurer of the county, but whose term had expired, to pay into the treasury of the county a certain sum of money which it was alleged he had retained of the funds of the office in excess of the amount to which the law entitled him, it was held: "A proceeding by *mandamus* is barred by the statute of limitations at the expiration of four years from the time the right to the writ accrued;" and in the body of the opinion, written by NORVAL, J., it was said: "It was the duty of the respondent, immediately upon the expiration of his term of office, to pay over to his successor in office all moneys then in his hands belonging to Gage county, and upon his failure so to do a cause of action accrued in favor of the county. It will be observed that the petition was filed in the court below more than four years after the expiration of the respondent's term of office and after the accruing of the alleged cause of action. The case, therefore, falls directly within the rule laid down by this court in *State v. School District*, 30 Neb., 520, where it was held that the statute of limitations applies to the proceed-

ing by *mandamus*, and that such an action is barred at the expiration of four years."

But it may be claimed that the presentation of the alleged incomplete reports, which, it will be borne in mind, corresponded in all things to what appeared in the fee book in its entries, etc., for the respective periods covered by the reports, operated as a fraud on the relators, hence the statute of limitations did not begin to run until the fraud was discovered, in accordance with the terms of section 12 of the Code of Civil Procedure, wherein it is provided, among other things, as follows, referring to the time within which actions can be brought: "Within four years, * * * an action for relief on the ground of fraud, but the cause of action in such case shall not [be] deemed to have accrued until the discovery of the fraud." That it was not discovered until in July, 1891, when they ascertained it from the report of the expert who had been employed for the purpose and who had examined the books and papers of the county clerk's office in use during the year 1888, the year in question, of the respondent's term as such officer. This seems hardly an action which comes within the meaning of the terms of the section of the Code which we have just quoted, *i. e.*, "An action for relief on the ground of fraud," but allowing it to be such, the stipulation shows that the estimate of the shortage was based entirely upon what the records of the office showed to have been earned, figured on the basis of the charges which the expert who examined the books determined should have been made by the respondent for the different duties of the office which the books disclosed had been performed by him, regardless of what the respondent had actually charged and collected. And from the pleadings it appeared that the alleged shortage was, in part at least, composed of sums which, the relator claims, should have been charged for services, in addition to what the respondent had charged and collected for such services as shown in the fee book and also in the quarterly reports to the board of such items. The statute

State v. Boyd.

in regard to fees prescribed the true amounts to be charged, and they were known to the relators, or must be presumed to have been known.   The fee book and reports showed the services had been performed, all of which, to the extent such items are included in the estimated shortage, was sufficient to call the attention of the board, to give it notice of any discrepancy between the charges as made by respondent and entered on the' books, and as they should have been according to statute.   In regard to any services which had been rendered, and for which no charges appeared in the fee book or reports, the matters to which they were referable were of record and open to the examination and inspection of the relators;  hence of them they had constructive notice.   This was such knowledge of the facts as to be called a "discovery of the facts," within the meaning of the statute, and this cause of action accrued and the statute began to run at the time the relators became possessed of such knowledge.   "An action for relief on the ground of fraud may be commenced any time within four years after a discovery of the facts constituting the fraud, or of facts sufficient to put a person of ordinary intelligence and prudence on an inquiry which, if pursued, would lead to such discovery." (*Parker v. Kuhn*, 21 Neb., 413; *Hellman v. Davis*, 24 Neb., 793; *Wright v. Davis*, 28 Neb., 479; *Gillespie v. Cooper*, 36 Neb., 775; *Norris v. Haggin*, 28 Fed. Rep., 275.)

There are other questions presented, but as the conclusions reached effectively dispose of the action, and for such reason that it may be said that the other questions, which present the cause on its merits, are not necessarily or properly before the court, since any litigation of them in this action was barred by the statute of limitations, we deem it proper not to discuss them at this time.   It follows from the views herein expressed that the application for the writ must be denied and the action dismissed at costs of relators.

DISMISSED.