HARRIS FINLEY, *as probate judge of Kiowa County, Oklahoma Territory,* v. THE TERRITORY OF OKLAHOMA, *ex rel.* L. M. KEYS, *county attorney of Kiowa County,. Oklahoma Territory.*

(Filed June 8, 1903.)

1. **PROBATE JUDGE—Jurisdiction in Townsite Matters.** Congress, in addition to the jurisdiction granted by our legislature, has conferred jurisdiction upon the probate judges in townsite matters.

2. **SAME—Jurisdiction Conferred on Office.** The jurisdiction conferred upon the probate judges in townsite matters was conferred upon the office and not on the individual, and congress did not thereby create a separate and distinct office, or trust.

3. **SAME—Must Report All Fees.** The probate judges are required to report all fees and compensations received for services performed by them by virtue of their office, and they have no authority to withhold any of them no matter from what source they are derived.

4. **SAME—Salary, How Derived.** The probate judges are entitled to retain from such fees and compensation for services performed by them only the maximum salary allowed by law, based upon the population of their counties, and the excess must be paid into the county treasury. And this applies to all fees, compensation or emoluments received by the probate judges when acting in townsite matters.

5. **OFFICE AND OFFICER—Duties and Compensation.** A public officer is bound to perform the duties of his office, no matter how onerous they may be, for the compensation fixed by law.

6. **SAME—Failure to Report, Mandamus Will Lie.** Where the law requires a public officer to report all fees received by him by virtue of his office and he fails, neglects or refuses to do so, mandamus is the appropriate remedy.

7. **MANDAMUS—Will Not Abate Until Law Is Complied With.** Where a writ of mandamus is awarded requiring a probate judge to report all the fees of his office and to pay into the county treasury any

excess above the amount he was by law allowed to retain, the action will not abate upon the expiration of his term of office.

8. SAME—Pleadings Construed, How. The pleadings in proceedings in mandamus are, by the code, to be construed as pleadings in ordinary actions. Hence a demurrer to the answer can only be rightfully sustained when the answer in fact contains no defense to plaintiff's cause of action.

(Syllabus by the Court.)

*Error from the District Court of Kiowa County; before John H. Burford, Trial Judge.*

*Frank Hall, Ernest M. Bradley, C. L. Clay* and *John T. Bradley,* for plaintiff in error.

*J. C. Robberts, Attorney General,* for defendant in error.

Reversed and remanded.

Opinion of the court by

HAINER, J.: This is a proceeding in mandamus brought in the district court of Kiowa county by the Territory of Oklahoma on the relation of L. M. Keys, as county attorney of said county, against Harris Finley, as probate judge of the probate court of said county, for the purpose of compelling the said Harris Finley, as probate judge, to report and account for all fees received by him for his services as probate judge of said county, and particularly the fees or compensation received by him for his services while acting in townsite matters, and require him to pay to the county treasurer of said county, all such fees which he has received for his services by virtue of his office since he has occupied said position as probate judge and in excess of the amount allowed to him by law as his annual salary as probate judge of said county. A peremptory writ of mandamus having been awarded by the

·district court the cause is brought here for review by the plaintiff in error, defendant in the court below.

The principal question presented by the record and discussed by counsel for plaintiff in error is whether the probate judges in this territory are required to report fees received by them while acting in townsite matters. It is contended by plaintiff in error, that the power and jurisdiction conferred upon the probate judge by act of congress in townsite matters constitutes a separate and distinct office or trust, and is wholly separate and distinct from the jurisdiction vested in him as a probate court. In other words, that they constitute two separate and distinct offices. And hence the probate judge is not required to report and account for fees received by him in townsite matters. To determine this question it is necessary to ascertain what power and jurisdiction has been conferred upon the probate courts by congress and also by the legislature of this territory.

Section 9 of the organic act provides:

"The judicial power of said territory shall be vested in a supreme court, district courts, probate courts and justices of the peace. * * * The jurisdiction of the several courts herein provided for, both appellate and original, and that of the probate courts and of the justices of the peace, shall be as limited by law."

At the first session of the Oklahoma legislature in 1890, an act was passed defining the powers and jurisdiction of the probate courts and the judges thereof in probate matters only. And on December 25, 1890, the legislature passed another act entitled: "An act Extending the Jurisdiction of the Probate Court in Civil and Criminal Causes and Prescribing

the Procedure Therein, and Providing for Appeals Therefrom;" and provided that said act shall be in force and take effect from and after its adoption and legalization by act of congress. (Article 15, chap. 18, p. 364, Statutes of 1893.)

By the act of congress approved March 3, 1891, it was provided:

"That in addition to the jurisdiction granted to the probate courts and the judges thereof in Oklahoma Territory by legislative enactments, which enactments are hereby ratified, the probate judges of said territory are hereby granted such jurisdiction in townsite matters and under such regulations as are provided in the laws of the state of Kansas." (26 U. S. Statutes at Large, 1026.)

The contention of plaintiff in error that the probate judge while acting in townsite matters is a separate and distinct office is not well founded. The authority conferred in townsite matters by congress was an additional power and jurisdiction delegated to the probate courts of this territory. Congress conferred this power upon the office and not on the individual, and congress did not thereby create a separate and distinct office. Can it be said that when the probate court exercises the powers and jurisdiction of a justice of the peace that he is, while performing such duties, a justice of the peace? Or can it be said that when he exercises the jurisdiction of a district court in the trial of certain civil causes that he is a district judge? Or can it be said that when he is acting in townsite matters that he is a judge of the United States court, or an officer of the United States, or a trustee for the United States? These questions must be answered in the negative. It seems to us that the language of the act of congress which confers additional powers upon the probate judges

in relation to townsite matters is so clear and explicit that it needs no interpretation. Congress has conferred power upon the probate judges of this territory to enter townsites on public lands in trust for the use and benefit of the several occupants thereof according to their respective interests. The execution of the trust and the disposal of the lots is to be conducted under the local laws. After the townsite has been entered in the manner provided by law it is conveyed to the probate judge, that is, to the person filling that office, and in trust for the use and benefit of the occupants thereof; the United States then parts absolutely with all interest in or control over the land, and the probate judge must execute the trust by conveying the several lots in such town to the rightful claimants, according to their respective interests. In other words, when the patent has issued to the probate judge, the United States parted with all connection with the townsite, and had no further control or supervision over the execution of the trust by the probate judge. This principle has been clearly enunciated by the supreme court of the United States in the case of *McDaid v. Territory of Oklahoma,* 150 U. S. 208. In this case the question arose as to whether or not a person had the right to appeal in cases involving lots in townsites disposed of by trustees appointed by the secretary of the interior, under the act of May 14, 1890. (26 U. S. Stat. at Large 109.) By this act congress conferred upon the secretary of the interior the power to appoint three trustees in certain cases in the Territory of Oklahoma to enter townsites and dispose of the same under such rules and regulations as may be prescribed by the secretary of the interior. It was held that these trustees were the agents of the government, and their decisions were sub-

ject to appeal under the regulations made by such secretary of the interior. And by the scheme of this act the title was held in trust for the' occupying claimants, and also in trust *sub modo* for the government until the rightful claimants and the undisposed of or surplus lands were ascertained. But a different rule was enunciated where the townsite was entered under section 2387 of the Revised Statutes of the United States. Under the act of May 14, 1890, the government retains its connection by having the townsite entered by its own agents, and the trust executed in the manner it directs. But when the townsite is entered under section 2387, then the government parts absolutely with the title, and all interest in connection therewith. The opinion in this case was delivered by Mr. Chief Justice Fuller, and in defining the two statutes he used the following language:

"In the one case (referring to section 2387) the government parted with its connection with the land when the patent issued to the local authority; in the other, (referring to the act of May 14, 1890), the government retains its connection by having the entry made by its own agents, and the trust executed in the manner it directs."

This duty is imposed upon the office, and every act performed by him in relation to such townsite must be performed by him in his official capacity as probate judge, and on the expiration of his term of office or on his resignation, or removal from office, or in case of vacancy by death, the trust remains and continues in the office, and must pass to his successor in office.

In *Whittlesey v. Hoppenyan*, 72 Wis. 140, 39 N. W. 355, the supreme court of Wisconsin held that the trust authorized

by the act of congress was an official trust pertaining to the office of county judge, and not a personal one, although the name of the judge is inserted in the patent. In this case it appears that the county of La Pointe embraced the town of Ashland, and the townsite was entered by the county judge of said county; subsequently, and before the trust was fully executed, La Pointe county was divided, and the new county of Ashland was created. The new county embraced the townsite of Ashland. The question there arose as to who was the proper person to fully execute said trust, whether the judge of La Pointe county, who entered the land, or the judge of Ashland county, in whose jurisdiction the townsite was located after the division of the county. The court, in discussing this point, said:

"We have no doubt whatever that the trust created by the patent to Schuyler Goff, judge of La Pointe county, in trust, etc., was an official trust, pertaining to the office of county judge, and not a personal one, although the name of the judge is inserted in the patent. (*Supervisors v. Railroad Co.,* 24 Wis. 126.)"

And again the court said:

"We perceive no good reason why the mere fact that the patent happened to be made to the judge of La Pointe county should operate to continue that officer as the trustee after the townsite had ceased to be a part of that county. It was the manifest intention of congress that the trustee should be the judge of the county in which the townsite is situated. Hence we think when the county of Ashland was organized, the judge of that county became the trustee of the townsite in question, and is the officer to administer and execute the trust."

This case is approved and followed in *Tucker v. Whit-*

*tlesey,* 41 N. W. 535, where the supreme court of Wisconsin again held that the county judge of a county embracing a townsite which was patented under the United States townsite law to the county judge of the county out of which the former county has since been formed, is the successor of the latter judge, so as to enable him to execute the trust deed.

It must therefore follow that at all times while exercising the power and jurisdiction conferred upon him, either by the laws of congress or of this territory, he is a probate court, or judge thereof, and must act in that capacity and no other in townsite matters.

The legislature of this territory has the undoubted power to fix the fees and salaries of the probate judges and to require them to report and account for all fees received by them. And this is what our legislature has done.

Section 11, chapter 15, Session Laws of 1897, provides as follows:

"That whenever the probate judge of any county shall be compelled to perform any services for which no fees are fixed by law, he shall be entitled to receive therefor the same fees as may be by law allowed to district clerks for like services; Provided, That the probate judge shall be allowed to retain out of the fees provided by law as his annual salary the following salary and no more. In counties of ten thousand inhabitants or less, one thousand dollars; in counties of not less than ten thousand inhabitants nor more than fifteen thousand inhabitants, twelve hundred dollars; and in counties of not less than fifteen thousand inhabitants nor more than eighteen thousand inhabitants, fourteen hundred dollars; and in counties of more than eighteen thousand inhabitants, the sum of sixteen hundred dollars. In no case shall the

county be liable for the payment of the salary of the probate judge or the compensation of any clerk of the probate court."

Section 12 of said act provides:

"The probate judge of each county shall keep an account of all fees for services rendered by him, in a book provided for that purpose, showing the title or style of the case or proceeding in which such services were rendered, or the name of the person for whom rendered, the amount charged, and the amount received, from whom and for what purpose, and the date thereof. The footings for each month, at the close thereof, shall be legibly and correctly entered in said book opposite the month during which the same shall have been charged, showing the amount received, the amount charged, and the amount remaining due and unpaid."

Section 13 of said act provides:

"He shall, on the first Monday of January and the first Monday after the first Tuesday in April, and the first Mondays of July and October of each year, make out and present to the board of county commissioners a detailed statement of all fees received by him during the preceding quarter, together with the amount of fees earned which remain unpaid, which report shall be made under oath and filed with the county clerk."

Section 14 of said act is as follows:

"He shall at the time of making such report, pay into the county treasury all moneys received as fees during the three months immediately preceding the date of filing of said report, in excess of one-fourth of the amount allowed by law as the annual salary of the probate judge: Provided, That should the amount of fees received by the probate judge during any quarter be less than the amount allowed to him as his salary for said quarter under the provisions of this act, such deficiency may be made up out of the excess of his re-

ceipts from fees over the amount of his salary during any quarter of his term or terms of office."

Section 15 of said act provides:

"Any probate judge who shall fail to make a quarterly report under oath as herein required shall forfeit to the county twenty-five dollars for each day he shall wilfully fail so to do, to be recovered from his bondsmen, as in other cases."

Section 16 of said act reads as follows:

"Any probate judge who shall fail to make his quarterly report to the board of county commissioners as required by law, or who shall make any false entry or statement in said report, or shall fail to report all fees collected by him, or shall violate any of the provisions of section twelve of this act, or shall fail or refuse to pay into the county treasury all moneys received by him as fees during each quarter in excess of one-fourth of the amount allowed to him as his annual salary under the provisions of this act, shall be guilty of a misdemeanor, and upon conviction thereof, shall be fined in any sum not less than three hundred dollars nor more than one thousand dollars, and upon such conviction he shall forfeit his office."

And section 37 of said act provides:

"That the fees of the county clerk and treasurer and all fees paid into the county treasury by the sheriff, probate judge and register of deeds, shall be placed in a special salary fund for the purpose of paying the salaries of county officers."

In the light of these various statutory provisions, it clearly appears that the office of probate judge is purely a fee office; that he is required to keep a strict and accurate account of all fees received and charged by him; and that he

is entitled to retain from such fees the maximum salary allowed by law, and the excess, if any, he is required to pay into the county treasury.

There is no question in this case as to the schedule of fees to be charged by the probate judge; or whether the amounts collected by him are the fees authorized to be charged by law; and there is no question as to whether the fees collected by him were legal or illegal. The law authorizes the probate judge to charge a specific fee for every official act he performs, or for every act he performs by virtue of his official position; and where specific fees are not fixed my law then "he shall be entitled to receive therefor the same fee as may be by law allowed to district clerks for like services." and when received or charged, such fees must be entered in the book required for that purpose, and this without regard to the purpose for which the act was performed. From the aggregate amount of fees received from all sources, the probate judge may retain the amount allowed as salary, based on the population of his county, and the excess must be paid by him into the county treasury. And the statute makes it a crime if he fails to report the fees collected, or pay the excess over to the county. The statute is clear, positive, explicit and mandatory. And hence there can be no question as to the legislative intent. It was the manifest purpose of the legislature to fix the compensation of probate judges upon a salary basis dependent upon each judge earning the amount allowed to be retained from fees for services rendered by him; and even if he should charge illegal fees, or fees in excess of the amount allowed by law, he cannot be heard to plead such illegality or want of authority; but must enter the same

on his books, and include the amounts in the sum to be accounted for by him.

In *People v. Hamilton,* 37 Pac. 627, it was held by the supreme court of California, that where a county clerk, acting in his official capacity, and under color of his office as clerk of the superior court, collects advance costs contrary to law, he must, at the end of his term, turn over to the county treasurer, and not to his own successor in office, the amount thereof remaining in his hands.

In *People v. Van Ness,* 79 Cal. 89, 21 Pac. 554, the supreme court of California said:

"Fees collected without legal authority by the commissioner of immigration in his official capacity and under color of law, belong to the state and not to him."

In this case it appeared that the defendant, Van Ness, was commissioner of immigration for the port of San Francisco, and under color of his office illegally collected certain fees for administering oaths to ship captains. There was no authority of law for collecting such moneys. It was contended by Van Ness that as the money was collected by him without legal sanction, he had the right to retain it as his own, and as he did not retain it, but paid it into the county treasury, he should have been credited with it by the court below, and that the amount should be deducted by the supreme court from the amount of the judgment. Mr. Justice Thornton, speaking for the court, said:

"We cannot give our sanction to this contention. The money, having been collected under color of office, should have been paid into the state treasury, and did not belong, in any view, to Van Ness, and he had no right to retain it. He only

did his duty in turning it over to the state. It belonged really to the shipmasters of whom it was collected; but the state, in whose and by whose authority it was pretended to have been collected, was the proper custodian of such moneys."

But it is contended that the statutes make no provision for charging a fee in townsite matters, and since no fee is provided for by law that the probate judges are not required to report and account for any compensation that they may have received for performing such extra services. This contention, we think, is untenable.

The supreme court of Nebraska had this same question before it and has held that where a county clerk performs extra services as a clerk of the board of county commissioners, and no fee or compensation is provided for by law, and the county commissioners allow his additional pay for such services, that the clerk must report and account for the same.

In *State v. Russell*, 51 Neb. 778, 71 N. W. 785, the question arose whether the county clerk was required to report the compensation received by him for services rendered as clerk of the board of county commissioners, and also for fees received by him for making out the tax lists of the county. Under the laws of Nebraska where the county clerk's fees in the aggregate exceed the sum of fifteen hundred dollars per annum, he is required to pay the excess into the county treasury. The clerk is also required to keep a fee book in which he must enter a detailed statement of all fees collected and received by him as county clerk. It appears that for a number of years the county commissioners had allowed the county clerk the sum of four hundred dollars per annum as extra compensation for services performed as clerk of the board of county com-

missioners. The county clerk made no report of such fees or compensation. And it also appears that he received fees for making out the tax list of the county, for which he did not account and include in his report. An action in mandamus was brought against him to require him to account for such fees. The district court held that the clerk must account for the fees received in making out the tax lists of the county, but that he was not required to report and account for services rendered as clerk of the board of county commissioners. The case was appealed, and the supreme court sustained the lower court as to that part of the judgment where it was held that the county clerk was required to report for fees received in making out the tax lists of the county, and reversed that part of the judgment which held that the county clerk was not required to account for fees or compensation as clerk of the board of county commissioners. It was there contended as here, that it was no part of the duties of the county clerk to act as clerk of the county commissioners, and when he acted in such capacity he is entitled to extra compensation, and that it was no part of his duties to report and account for such compensation. It was also contended in this case that no fees were provided by law for performing the duties as county clerk of the board of county commissioners, and hence the county clerk was not required by law to account for compensation received by him for the performance of not only extra duties, but for duties for which no fees or compensation are provided by the statute. The supreme court in discussing this subject, said:

"It is quite evident that it is no misuse of the term to describe as fees the recompense of the clerk for services

rendered the board of county commissioners, or for making out tax lists of the county. As the clerk is by statute required to turn into the county treasury the excess over $1,500 for his services each year, there exists a good reason for requiring him to make under oath and enter in a fee book the several amounts which constitute the compensation which he is entitled to receive for services rendered as an officer. We therefore hold that it was the duty of the respondent to enter on the fee book provided for that purpose the several amounts received by him, as well as for services as clerk of the board of county commissioners, as in making out the tax lists of the county." (*Hazelet v. Holt Co.*, 71 N. W. 717.)

In *State ex rel. Frontier County v. Kelly*, 30 Neb. 574, 46 N. W. 714, it was held that where a county clerk, who is also a notary public, takes acknowledgments of deeds and mortgages, and takes affidavits and depositions as a notary public it is his duty to enter upon his fee book as county clerk, and report to the county board, every item of fees received by him for such services. In this case it was contended as it is here that it was no part of the official duties of the county clerk to take acknowledgments of deeds and mortgages, and that it was no part of his official duties as such clerk to take depositions, and that he performed such services by virtue of his commission as a notary public, and therefore was not required to include such charges in his report to the board of county commissioners. It was also contended in this case that no fees were fixed by the statute to perform such labor. Mr. Justice Norval in passing upon this question uses the following language:

"The duty of a public officer to perform a particular act does not depend upon whether the legislature has prescribed the remuneration he shall charge therefore, but rath-

·er whether the law, in express terms, or by implication, makes it his official duty to render such service."

The same rule was announced and followed in *State v. Hazelet,* 41 Neb. 257; 59 N. W. 891. (See also chap. 28, p. 481, Comp. Laws of Nebraska, 1889.)

In *State v. Allen,* 23 Neb. 756, it was held under a statute substantially like ours, that it was the duty of the county treasurer to make searches of tax lists, books and records in his care and custody as such county treasurer, and to make abstracts and copies therefrom, and attach his certificate and seal thereto when lawfully demanded. And it is also his duty to enter in the fee book to be kept by him for that purpose, every item of fees received by him, including those received by such abstracts, copies and certificates, and make quarterly reports thereof to the county board. It was strenuously contended in this case as it is in the case at bar, that the statute did not prescribe the fee for such services, and since no fees were prescribed none could be charged; but if any compensation was paid for such services it was a voluntary payment by the person for whom the services were performed, and consequently the county treasurer was not required to report and account for the same. Mr. Justice Cobb in discussing this question said:

"The argument is based chiefly upon the premises, false I think, that a public officer can in no case demand fees for official services, except where the same and the amount thereof are prescribed by statute. It may, and doubtless does, often happen in drafting a fee bill that the legislature by mistake or oversight, omits to name and prescribe a fee for some of the specific items of service of certain officers of the nature,

kind and character for which fees are ordinarily required; services often required by individuals, and which the officer could not reasonably be required to perform gratuitously, where his compensation consists wholly of fees, nor which the public ought to furnish free where he is a salaried officer. Is it possible that in all such cases the service for which no fee is prescribed, whatever may be its nature, is voluntary and unofficial on the part of the individual holding the office, which he may render or refuse at his pleasure? I think not. Of this character are the certified copies of the books and records belonging to the office of the county treasurer, expressly declared by section 137, c. 77, Comp. St. 1887, p. 611, to be 'sufficient evidence to prove the sale of any real property for taxes, the redemption thereof, or the payment of taxes thereon.' This certified copy, so far as it relates to the books and records belonging to the office of the county treasurer, can only be made by the county treasurer or his deputy, and yet the statute prescribes no fee for his services in furnishing such copy. It is nevertheless his official duty to furnish it when demanded, and to demand and receive a reasonable fee for the same. It is the policy of the laws of our state, as far as practicable in the nature of things, to make all state and county officers salaried officers, and to make to the incumbents a fixed compensation, not dependent ordinarily upon the varying and accidental demands of the public for their services. Incident to such policy is the requirement which we have seen, that all county clerks, county treasurers and sheriffs, keep a book in which shall be entered each and every item of fees collected, and make a quarterly report thereof to the county board. This is a reasonable requirement, and the terms of the statute are mandatory. I think there can be no doubt of the right or of the duty of the county treasurer to collect reasonable fees for the services of the kind named in the relation, nor that such fees fall within the meaning of the statute making it his duty to enter each and every item of fees collected in the

book to be kept for that purpose, and to make quarterly returns thereof, etc."

The case of *State v. Sovereign,* 17 Neb. 73, 22 N. W. 253 was a proceeding in mandamus to compel the county clerk to report the fees received by him for making abstracts of title, It appears that the clerk had been also commissioned by the governor as a notary public. In this case it was contended by the clerk that the abstracts were not made by him as county clerk, but as a notary public, which office he held by virtue of his appointment from the governor of the state of Nebraska. And it was contended there as in this case, that this constituted a separate and distinct office, and that he was not required to account and report for fees received by him as such notary public. The supreme court of Nebraska held that the abstract of title was in effect a copy of the entries in the numerical index which the clerk was required to keep as a public record, and that fees received by him for a certified copy of the same must be reported and accounted to the county commissioners. And where he failed or neglected to report such fees, that mandamus was the appropriate remedy..

In *Stoner v. Keith Co.,* 67 N. W. 311, the supreme court of Nebraska held that a public officer must discharge all the duties pertaining to his office for the compensation allowed by law, and will not be allowed compensation for extra work, unless it is authorized by statute. (See also, *State v. Silver,* 2 N. W. 215, 9 Neb. 88; *Bayha v. Webster Co.,* 24 N. W. 457, 18 Neb. 131.)

We concur in these views and think that the principles therein announced are applicable to the case under consideration.

But it is contended that the term "fees" does not include compensation or charges received for services while acting in townsite matters. We do not think so. We think the word "fees" as used in our statute clearly includes all compensation or charges received by the probate judge by virtue of his office. And this view of ours is sustained by the authorities.

In volume 12, page 889, of the American and English Encyclopedia of Law, (second edition), it is said:

"Fees are a reward or wages given to one as a compensation for his labor and trouble, for the execution of his office."

One of the definitions of the word "fee" given in Webster's International Dictionary is:

"Reward or compensation for services rendered or to be rendered; especially payment for professional services of optional amount, or fixed by custom or law; charge; pay; perquisite; as, the fees of lawyers and physicians, the fees of office, clerk's fees, sheriff's fees, marriage fees, etc."

In the Century Dictionary the word "fee" has, among other definitions that of:

"Money paid or bestowed; payment; emolument."

In Winfield's Adjusted Words and Phrases it is said:

"The meaning of the word 'fee' is a recompense allowed by law to officers for their labor and trouble. (*Harbor Master v. Sutherland,* 47 Ala. 517.) Fees are a compensation allowed by law for specific services by an officer. (*Williams v. State,* 2 Sneed 162.) The word 'fees' is used in two senses, in one to denote the charges of the officer for his personal services; in the other, (which is the more general and popular

use), all the expenses attending the levy, and included in it. (*Camp v. Bates*, 13 Conn. 9.)"

A statute in Pennsylvania provided that a certain percentage of a public officer's fees should be paid into the treasury. It was held that the sum paid to the clerk of the court of sessions in liquor license cases was to be regarded as fees within the meaning of the Pennsylvania act taxing fees. The court said:

"While the acts of 1887 and 1891, both designate the payment as being made for expenses it is a payment to the clerk, which he is at liberty to keep, taking credit against it for actual expenses paid; and the balance is therefore an emolument of the office, and, under the taxing laws, must be regarded as a part of the income of the office. Any other construction would produce the absurd result that a large part of the purely official income of the clerk would be held free of all taxation, which cannot be endured consistently with the obvious purpose of the legislature. It would be a very narrow and constrained construction to hold that because the taxing acts use the word "fees" in describing the official income subject to taxation, they thereby intended to include all sorts and kinds of income which did not come within the technical designation of fees. We are clearly of the opinion that receipts from this source are a part of the official receipts of the office, and are subject to taxation as such. (*Com. v. Fry*, 183 Pa. St. 32.)

"Fees are compensation for particular acts or services, as the fees of clerks, sheriffs, etc. (*Cowden v. Huff*, 10 Ind. 85.)"

The decisions of the supreme court of the United States sustain the same general doctrine.

In *United States v. Hill*, 120 U. S. 169, the question

arose whether the clerk of the district court was liable on his official bond for an alleged breach in the failure to account for fees charged by him in naturalization cases pursuant to section 823 of the Revised Statutes of the United States, which requires such .clerks to account for all fees and emoluments of their offices of every name and character. In this case it appears that the court made an order that applications by aliens to be admitted to become citizens of the United States shall be presented to the court while in session, and that proof of the facts whereof the court is required by law to be set forth shall be made by at least two credible and disinterested witnesses, who are citizens of the United States, who are bound to be produced and examined in open court; that before such applications are presented, all necessary papers shall be filed with the clerk, who shall report to the court, when the application is made, that he has examined the same, and whether they are in good form, and in conformity with the requirements of the law, or how otherwise. It was contended by the government that the clerk was required to account for such fees under section 823. The circuit court of the United States for the district of Massachusetts held that such services were rendered by order of the court as a special officer or master, and not as clerk, and that they were not duties pertaining to the office of clerk, and that they could as well have been performed by any other person designated by the court for the purpose; as by the district attorney, or the commissioner of the circuit court, or an attorney, or any suitable person not an officer of the court. The supreme court of the United States sustained the decision of the circuit court. The opinion of the court was delivered by Mr. Justice Blatchford; and in the course of the opinion he

41—Vol 12

quoted with approval the following language used in the circular letter of Attorney General Devens of January 14, 1879, issued to the clerks:

"This language, (referring to section 833), embraces every possible fee or emolument accruing to you by reason of your official capacity, and does not allow the withholding of any. Whatever is done by you that you could not do if out of office, has an official color and significance that brings it within the compass of the language of the statute."

Mr. Justice Blatchford, in commenting upon these words, said:

"This is undoubtedly a forcible and accurate statement of the meaning of the statute. But the naturalization fees do not come within this rule. They did not accrue to the clerk by reason of his official capacity, and were for work which might as well have been done by him when out of office as when in."

We think that the language used by Attorney General Devens is peculiarly applicable to the case under consideration. The statute fixing the compensation for probate judges embraces every possible fee, compensation or emolument accruing to the probate judge by virtue of his office, and does not permit him to withhold any of them. The test is, whatever is done by such probate judge that could not be done by him as a private individual, and when not exercising the powers and duties of his office, is clearly within the purview of the statute requiring him to report and account for all fees and emoluments received by him. In other words, the law says to the probate judge: You have the power, the authority and the jurisdiction to perform certain official acts as a probate court, or judge thereof, and you have the right to charge certain

fees for the performance of such duties; but you must report and account for all fees received by you in virtue of your office; you have no right to withhold any of them, no matter from what source they are derived, whether received while acting in probate matters or in the trial of civil and criminal cases while exercising the jurisdiction of a justice of the peace or in civil causes in which the district court has concurrent jurisdiction, or in townsite matters;· in all these cases, you have the power and authority to act by virtue of the office that you hold, and no act can be performed by you save and except by virtue of such office, and hence you must report and account to the proper authorities for all fees received by you, and retain from such fees only the maximum salary allowed you by law, and the remainder, if any, must be covered into the county treasury.

The case of *United States v. Brindle,* 110 U. S. 688, cited by plaintiff in error, does not sustain their contention in this case. In this case Brindle was appointed receiver of public moneys at Lecompton, Kansas, and while he was performing the duties of receiver of public moneys he was appointed as a special commissioner to dispose of the Delaware Indian trust lands situated near Fort Leavenworth, Kansas. The supreme court of the United States held that he was entitled to a commission on sales of these lands in addition to his compensation as receiver of public moneys. It was expressly held in this case by the supreme court that it was no part of the duty of Brindle, as receiver of public moneys at Lecompton, Kansas, to sell the trust lands and receive the payments thereof. His duties in connection with that office were to receive and account for public moneys paid for public lands. The moneys

paid for the Indian lands were trust moneys and not public moneys. And hence when Brindle was appointed to dispose of the trust lands, he was employed to render services in no way connected with the office he held, and no additional duty was imposed upon him as receiver of the land office. In other words, the duties were entirely separate and distinct. They were not one and the same office. Had it been a part of the duties of the receiver of public moneys at Lecompton, Kansas, to sell and dispose of Indian trust lands, then, certainly, it would have been a part of Brindle's duties, as receiver of public moneys, to perform these additional duties, and no additional compensation could have been allowed. The same doctrine was announced by the supreme court of the United States in *Converse v. United States,* 21 Howard, 463.

In *United States v. Saunders,* 120 U. S. 126, it was decided by the supreme court of the United States that the federal law prohibiting the allowance of additional pay, or extra compensation to public officers, has no application to two distinct offices, places or employments, each of which has its own duties and compensation, which offices may both be held by one person at the same time. In this case the rule announced in *United States v. Brindle* was followed.

In each of these cases the supreme court of the United States held that the offices were entirely separate and distinct, and neither dependent upon the other, and therefore the allowance of additional pay, or extra compensation, was permissible. But in the case at bar, as we have shown, the duties that are imposed upon the probate judge attach to that office and the additional duties and burdens imposed upon such office.

But it is argued by counsel for plaintiff in error that the duties devolving upon the probate judge in respect to townsite matters necessarily involve a vast amount of labor, and that it is not contemplated that he should bear the burden, worry and expense of so onerous a duty without receiving just compensation for such additional labors. We think this question should be addressed to the legislative branch of our government and is not a matter for judicial interpretation. The legislature has the power to fix the salaries or compensation of all territorial officers, including probate judges, and if the salary or fees which the law now allows the probate judges is inadequate, and not commensurate with the duties that they perform, it is within the power of the legislature to change or modify the law so as to make the fees or salary commensurate with the duties performed. And if the law as now framed does not afford adequate compensation for the faithful performance of the duties imposed upon the probate judges, an appeal must be made to the legislature for its modification. It is an elementary principle of law, and requires no citation of authority, that a public officer is bound to perform the duties of his office, however onerous they may be, for the compensation fixed by law. Is mandamus the proper remedy? Section 716 of our civil code provides that:

"The writ of mandamus may be issued by the supreme court or the district court, or any justice or judge thereof, during term, or at chambers, to any inferior tribunal, corporation, board or person to compel the performance of any act which the law especially enjoins as a duty, resulting from an office, trust or station."

We think that this clear and positive declaration of our code confers full power and jurisdiction upon the courts to

grant the relief that is sought in this case. Since our statute especially enjoins as a duty upon the probate judge to report and account for all the fees of his office, and to pay any excess above the amount that he is allowed by law to retain into the county treasury, it follows that if he fails, neglects or refuses so to do, mandamus is the appropriate remedy. The supreme court of Nebraska in construing a statute that is substantially the same as ours has adopted this rule. (*State v. Shearer,* 45 N .W. 784; *State v. Allen,* 36 N. W. 756; *State v. Sovereign,* 17 Neb. 73, 22 N. W. 253; *State v. Russell,* 71 N. W. 785; *State v. Boyd,* 68 N. W. 510.)

Since this cause has been argued and submitted, a motion has been filed by the plaintiff in error to dismiss the cause on the ground that the term of office of Harris Finley, the plaintiff in error, as probate judge of Kiowa county, has expired and that his successor in office has been duly elected, qualified and entered on the discharge of his duties. The motion must be denied. The duty imposed upon the plaintiff in error to report and account for fees received by virtue of his office is a personal duty which he alone can perform, and it is not a duty that is transmitted to his successor. And the fact that his term of office has ceased does not relieve him from the performance of a plain statutory duty that he is required to perform. If the action would abate upon the expiration of the office, then the same rule would apply if the officer should resign. Manifestly this would defeat the very purpose and object of the law to compel the officer to report and account for all fees received by him by virtue of his office, and at the expiration of each quarter of the term of his office. This identical question has been before the supreme

court of Nebraska, and it was there held in the case of *State ex rel. Cuming County v. Shearer,* 45 N. W. 784, that it is the duty of a county clerk to report all the fees of his office, and pay the excess over the amount to which he is entitled into the county treasury; and this duty is personal, to himself, and, in case of his failure to perform his duty in that regard, a mandamus may be issued, even after the expiration of his term of office, to compel the performance of such duty.

In *State v. Russell,* 71 N. W. 787, the same court in passing upon this question, said:

"In respect to the contention that mandamus will not lie to compel an officer whose term has expired to perform a duty expressly enjoined by law, it is deemed proper to refer to *State v. Barnes,* 16 Neb. 37, 19 N. W. 701, wherein it was held that a district judge whose term had expired could be compelled to settle a bill of exceptions. Not only is the case cited in point, but it is obvious that, if the clerk could not be compelled to report after his term had expired, there would be no remedy as to a failure to act at the expiration of the final quarter of each term. The right to this relief after the expiration of a term of office was recognized in *State v. Cole,* 25 Neb. 342, 41 N. W. 245; *State v. Stearns,* 11 Neb. 104, 7 N. W. 743; *State v. Boyd* (Neb.) 68 N. W. 510, and in other cases which might be cited."

In *State v. Boyd,* the court said:

"A mandamus will issue, even after the expiration of the term of office of a county clerk, to compel him to perform the duty of reporting all the fees of his office, and also to pay into the treasury of the county any excess above the amount he was entitled by law to retain."

But one question remains for consideration and that is, the sufficiency of the answer and return to the alternative

writ of mandamus herein. The plaintiff in error, defendant in the court below, in his answer denied each and every allegation contained in the alternative writ of mandamus, except such facts as are specifically admitted. The defendant admitted that he was the duly appointed, qualified and acting probate judge of said Kiowa county; that it was his duty as such probate judge to keep an account of all fees, and to report the same to the board of county commissioners; that it was his duty as probate judge to act as trustee in townsite matters, and in manner provided by law. But the defendant specifically denied that as probate judge he failed, neglected or refused to report moneys and fees received by him as said probate judge to the county commissioners during the periods mentioned in the alternative writ. The defendant further denied that the sum of $2,700, alleged in the alternative writ of mandamus, was collected by him as probate judge of said county; but that he received certain sums of money as trustee for the inhabitants of said townsite, and that said sums were not for his services as probate judge of said county; that the amounts charged to claimants of said lots, blocks and squares were the amounts designated by the townsite commissioners of said townsites in their various reports to him as trustee. The defendant also alleged that he was entitled to all necessary expense incurred by him as trustee of said townsite, and that such fees and expenses necessarily incurred by him as trustee should be paid to him from the moneys received from the lot claimants; and that after paying such fees and charges, and necessary expenses incident to the due execution of said trust, the defendant would not have any sum or sums in excess of the amount allowed by law for his services of probate judge of said county. To this an-

swer and return of the defendant the plaintiff interposed a general demurrer which was sustained by the court.

The pleadings in proceedings in mandamus are, by the code, to be construed as pleadings in ordinary actions. Hence a demurrer to the answer can only be rightfully sustained when the answer in fact contains no defense to plaintiff's cause of action. (*Crans v. Francis, treasurer, etc.,* 24 Kan. 750.)

In our opinion the answer of plaintiff in error, defendant in the court below, stated facts sufficient to constitute a defense to plaintiff's cause of action, if found true, and for the purpose of the demurrer it must be so regarded. The answer therefore raised an issue of fact upon which he is entitled to a trial by a jury. The court, therefore, erred in sustaining the demurrer thereto, which requires a reversal of this case.

The judgment of the district court of Kiowa county is, therefore, reversed, and the cause is remanded with directions to overrule the demurrer to the return and answer to the alternative writ of mandamus.

Burford, C. J., having presided in the court below, not sitting; Irwin, J., Beauchamp, J., and Gillette, J., concur in the result.