## ELDREDGE v. SALT LAKE COUNTY.

No. 2101. Decided January 17, 1910 (106 Pac. 939).

1 ALIENS—NATURALIZATION—JURISDICTION—OF STATE COURTS—NATURE OF AUTHORITY EXERCISED. The federal government in authorizing state courts to act in naturalization proceedings selects such courts and the clerks thereof as government agencies through whom the government is discharging a function of sovereignty; and while Congress may confer power on the state courts to act in naturalization proceedings and the state courts may constitutionally exercise the same when authorized so to do, Congress may not make their acts in that regard a part of their duties as state courts, and the power conferred and the duties imposed by the naturalization act (Act Cong. June 29, 1906, c. 3592, 34 Stat. 596 [U. S. Comp. St. Supp. 1909, p. 97]), are not ex officio powers and duties belonging to and devolving on a state office as such. (Page 193.)

2. STATES—OFFICERS—DUTIES. The state within its sphere may impose any duty it sees fit on an office it has the power to create, so long as the duties come within its sovereign power, but the state may not without the consent of the federal government empower any state officer to discharge functions belonging exclusively to the federal government. (Page 193.)

3. CLERKS OF COURTS—ACCOUNTING FOR FEES IN NATURALIZATION PROCEEDINGS. The duties which the clerk of a state district court discharges and the services which he renders in naturalization proceedings under the naturalization act (Act Cong. June 29, 1906, c. 3592, 34 Stat. 596 [U. S. Comp. St. Supp. 1909, p. 97]) are not duties imposed on nor services forming a part of the office, and the salary received as compensation therefor does not constitute compensation for extra official services, and he need not account therefor to his county, notwithstanding Const. art. 21, secs. 1, 2, providing that officers shall be paid fixed salaries, and Comp. Laws 1907, secs. 2057, 2062, fixing the salary of the clerk which shall constitute full compensation. (Page 194.)

4. Clerks of Courts—Compensation—Limitation of Emoluments—Fees in Naturalization Proceedings. The principle that the incumbent of a public office must discharge duties imposed on the office for the compensation fixed by law, and, where additional duties are imposed without additional compensation, he must discharge such duties for the compensation fixed by law, does not prevent the clerk of a state district court who performs services in naturalization proceedings under the naturalization act (Act Cong. June 29, 1906, c. 3592, 34 Stat. 596 [U. S. Comp. St. Supp. p. 97]) from retaining the fees as provided by the act. (Page 194.)

Appeal from District Court, Third District; *Hon. C. W. Morse,* Judge.

Action by J. U. Eldredge, Jr., against Salt Lake County.

Judgment for defendant. Plaintiff appeals.

Reversed and remanded with directions.

*John M. Zane* and *Willard Hansen* for appellant.

*P. T. Farnsworth, Jr.,* for respondent.

FRICK, J.

This case was submitted to the district court upon an agreed statement of facts, substantially as follows: That the appellant is, and at all times since January 1, 1907, has been, the duly elected, qualified, and acting clerk of the district court of Salt Lake County, Utah. That pursuant to the provisions of Act Cong. June 29, 1906, c. 3592, 34 Stat. 596 (U. S. Comp. St. Supp. 1909, p. 97), entitled "An act to establish a bureau of immigration and naturalization and to provide for a uniform rule for the naturalization of aliens throughout the United States," the appellant has collected from the applicants for citizenship the fees provided by said act to be collected by him, and that he has accounted for one-half of the fees so collected by him as provided by said act, but that he has retained and now has in his possession the remaining one-half of said fees, amounting to the sum of $632. That the services for which said fees

were collected were performed by virtue of the act aforesaid. That in performing said services no additional assistance or help was required or employed in the office of said district clerk, and the defendant county has not been under any additional expense by reason of the performance of said services by appellant for which the fees in question were collected by him.

Under the laws of this state appellant discharges the duties of clerk of the district court of Salt Lake County as the county clerk of said county. The laws applicable to county clerks are therefore applicable to appellant. By section 1 of article 21 of the Constitution of this state it is, among other things, provided that "all city, district, state, county, town, and school officers . . . shall be paid fixed and definite salaries." By the section following the foregoing it is, in substance, provided that the Legislature shall by law provide the fees which shall be collected by the officers referred to in the preceding section, and that all such officers "shall be required by law to keep a true and correct account of all fees collected by them, and to pay the same into the proper treasury, and the officer whose duty it is to collect such fees shall be held responsible on his bond for the same." Pursuant to the foregoing provisions, the Legislature, from time to time, has passed certain acts in which the fees for the services rendered by the different officers mentioned in the Constitution, including appellant, are fixed. The law also provides that the fees collected by the county officers, including appellant, shall be paid into the county treasury monthly. Among other fees provided for by the section of the statute which applies to appellant, and which he, before the act of Congress aforesaid was in force, was required to collect and account for, are the following items: "For declaration of intention to become a citizen of the United States, two dollars; for final citizenship certificate, three dollars." By section 2057, Comp. Laws 1907, the maximum amount of what appellant's salary may be fixed, and by section 2062 the

salary allowed consttiutes full compensation for all official services rendered by appellant.

Up to the year 1906 the naturalization laws of the United States were found in the different acts of Congress, commencing with the act passed in the year 1802 (Act April 14, 1802, chap. 28, 2 Stat. 153). This act was amended from time to time, as appears from title 30 of the Revised Statutes of the United States, which title comprises sections 2165 to 2174, inclusive (U. S. Comp. St. 1901, pp. 1329-1334), and was entitled, "Naturalization." These naturalization laws are also found in Rev. St., Utah 1898, pp. 87-90. It was by the act of 1802, that Congress first conferred the authority upon state courts to admit qualified aliens to citizenship. It seems that up to 1906, the naturalization laws were neither rigorous nor very explicit, and during all of the time from 1802 to 1906 Congress had left it to the several states to determine and fix the fees that the state or county officers should be permitted to collect for the services rendered by them in hearing and passing on application for and in making a record of the proceedings by which qualified aliens were admitted to citizenship. The matter of fixing, collecting, and accounting for fees accruing in said courts was thus a matter with which Congress did not concern itself until the passage of the act of June 29, 1906, known as the present naturalization act. This act is set forth in full in the Compiled Laws of Utah of 1907, at pages 114 to 130, inclusive. That act is the only comprehensive law ever enacted by Congress upon the subject of naturalization in which the entire procedure is provided, and in which provision for the collection of fees is made, and the manner of accounting for them is provided for. In section 3 of that act jurisdiction to naturalize aliens is conferred on all the Federal courts, and also upon "courts of record in any state . . . having a seal, a clerk, and jurisdictions of action at law or equity . . . in which the amount in controversy is unlimited." In section 13 of the act the clerk of each court is required to "charge, collect, and account" for fees as follows: For receiving and

filing declaration of intention, one dollar; for filing and docketing petition, two dollars; for entering final order and issuing certificate to applicant, two dollars. The statute further provides that "the clerk of any court collecting such fees is hereby authorized to retain one-half of the fees collected by him in such naturalization proceeding; the remaining one-half of the naturalization fees in each case collected by such clerks respetively, shall be accounted for in their quarterly accounts, which they are hereby required to render the bureau of immigration and naturalization, and paid over to said bureau within thirty days from the close of each quarter in each and every fiscal year." It is also provided that the money paid by the clerks aforesaid shall be deposited in the treasury of the United States. It is further provided that, when the fees collected by any clerk exceed the sum of three thousand dollars in any one year, then such clerk must account for and pay over all the fees in excess of said amount, and each clerk must also provide for and pay out of the fees collected by him all additional clerical help that may be required in performing the duties imposed by the act, but, in case any clerk collects fees exceeding the sum of six thousand dollars, then he may be allowed the cost of the additional clerical help that may be required. The act also provides penalties for the refusal of any clerk to comply with its provisions, or for failing to account, or for a violation of any of the provisions of the act.

Upon the facts and the laws as above outlined, the district court found in favor of respondent county, and entered judgment requiring appellant to account for said sum of six hundred and thirty-two dollars received by him as fees in naturalization proceedings. Appellant presents the record to this court for review on appeal.

The only question, in view of the record, to be determined is whether appellant, as *ex officio* clerk of the district court of Salt Lake County, should be required to account to said county for the fees collected by him in naturalization proceedings. Stating it in another form, does appellant receive such fees by virtue of his office, so that the

salary he receives constitutes payment for the services by him rendered in such proceedings? It seems to us too obvious to require either argument of the citation of authorities that in naturalization proceedings the United States government exercises sovereign functions which exclusively belong to that government, and, further, that, in authorizing the state courts to act in such proceedings, the national government selects such courts and the clerks thereof as government agencies through whom said government is discharging one of its peculiar functions of national sovereignty. Whatever may have been the theory of some courts regarding the power of Congress to confer such authority upon the state courts in the past, the question is now settled that Congress has such power, and that state courts may constitutionally exercise the same when authorized by Congress to do so. Among other cases, we refer to the following: *Levin v. United States,* 128 Fed. 826, 63 C. C. A. 476; *Robertson v. Baldwin,* 165 U. S. 275, 17 Sup. Ct. 326, 41 L. Ed. 715; *State v. Libby,* 47 Wash. 481, 92 Pac. 350.

The question as to whether the state courts continue or cease to be state courts while acting in naturalization cases, while interesting, is not material. It is enough for the present to know that in so doing such courts are merely agencies of the national government. It, however, does not follow that because Congress has the power to authorize appellant to act as an agent of the national government in naturalization proceedings Congress may likewise make his acts in that regard a part of the duties of the office held by him. The office held by him is and can be created by the state alone. The state within its sphere of sovereign power may thus impose any duties it sees fit upon the office it has the power to create so long as the duties it imposes come within its sovereign power. The State, however, cannot, without the consent of the national government, empower any state officer to discharge functions belonging exclusively to the national government. If this be so, then it follows that in creating the office of which appellant is the incumbent

37 Utah—13

the State, without the consent of Congress, could not confer upon him the authority to discharge any of the duties which are required of him by the act of Congress of June 29, 1906, and under w̄. ich the fees in question were obtained by him. The power conferred and the duties imposed by said act, therefore, are not such as adhere to the office, or such as are commonly designated as *ex officio* powers and duties belonging to and devolving upon the office as such. As we have seen, Congress, for obvious reasons, has not the power to attach duties to state or county officers as such, although it may have the power to grant to the incumbents of such offices authority to discharge certain powers which are exclusively vested in the national government.

From the foregoing it seems clear to us that the duties which appellant discharged and the services rendered by him by virtue of the act of Congress aforesaid are not duties which are imposed on nor services which are rendered as a part of the county office to which he was elected and of which he was the incumbent during the time in which the fees in question were earned and received by him. If this be so, then the salary which he received as compensation for discharging the duties of such county office was not intended to, and did not, constitute compensation for the extra official services he rendered as an agent of the general government in discharging the powers conferred on him by the act of Congress aforesaid and for which services the fees in question were allowed him by the national, and not by the State, government.

It is conceded by counsel for respondent that the State is powerless to fix or impose fees in naturalization proceedings without the consent of Congress. That this must be so seems clear, because to admit aliens to become citizens is a function belonging exclusively to the national government. But counsel for respondent nevertheless insists that, although the Congress fixed the fees and authorized appellant to retain one-half thereof as compensation for services rendered by him under the congressional act and required him to account to the national government for the other one-half, that not-

withstanding this, respondent is nevertheless entitled to the amount that Congress authorized appellant to retain for his services. This claim is however, based upon the contention that the services rendered by the appellant are rendered as a part of the duties of his office, and that the fees are a part of the emoluments of that office. We have already attempted to show that counsel's contentions in this regard are not sound. Counsel, however, cites concrete cases, which he contends, are decisive of the question in his favor. The case to which counsel refers as a parallel one is *Whittemore v. Seabury,* 23 How. Prac. (N. Y.) 121. That case was decided in 1862, and by the decision the clerk of the city court of Brooklyn was required to account for fees collected by him in naturalization cases. At that time, however, as we have pointed out, Congress permitted the states to fix and collect the fees in naturalization cases which were conducted in the state courts. The whole question of what the fees should be, and how collected and accounted for, was thus left to the states. The whole matter being thus within the power of the states, they no doubt could determine what should be done with the fees they had the power to and did impose. We have seen, however, that Congress has deprived the states of the power to impose fees in naturalization cases and with it went the power to dispose of them. In view, therefore, of the changed conditions, and for the reasons hereinbefore stated, the case last referred to is in our judgment not an authority.

The case of *Finley v. Territory,* 12 Okl. 621, 73 Pac. 273, is also relied on by respondent. In that case the office in question was a territorial office. By an act of Congress certain duties were imposed upon the incumbents of certain offices for which certain fees were provided by the act. Under the laws of the territory of Oklahoma, the officers were paid salaries for official services rendered. One of those officers, a probate judge, performed the duties imposed by the congressional act aforesaid, and claimed the fees allowed by the act as compensation, in addition to his official salary. It was held that the duties imposed by the act of Congress

were a part of the duties of the office of probate judge, and were compensated for by the salary paid to the judge. In classifying that case, it must be kept in mind that the territorial offices, as well as incumbents thereof, were always under the paramount control of Congress. In the very act under consideration in that case Congress expressly ratified the acts of the territorial Legislature with regard to the powers and duties that had been imposed on the office of probate judge and on the judge himself, and, after such ratification, also made it the duty of probate judges to perform the services required by the act. It was held that the probate judges must account for the fees provided by the act upon the ground that the services rendered under the act were rendered as a part of the duties imposed upon the office, and were compensated by payment of a regular salary. The decision in that case is based upon familiar principles, namely that the incumbent of any public office must discharge the duties imposed upon such office for the compensation fixed by law and if additional duties are imposed upon the office without additional compensation such duties must be discharged for the compensation fixed by law. That principle however does not apply to the case at bar for the reason that Congress has no power to add to the duties of a state or county office and the state with respect to the office in question, when it created it, did not have the power to confer authority upon appellant, or any other clerk, to discharge duties which related to powers which belong exclusively to the national government. We repeat, therefore, that neither the duties imposed nor the services rendered in naturalization proceedings under the act of 1906 were imposed nor rendered as a part of the official duties of appellant as the same were or could be imposed by the State of Utah, who alone had the power to create the office and to fix its duties and emoluments. The services were rendered, not as an agency of the State of Utah, but as an agency of the national government, for which the national government, and not the state, fixed and allowed the compensation. The decision in the case of *Rhea v. Board of Com'rs,* 12 Idaho,

455, 88 Pac. 89, is based entirely upon the authority of *Finley v. Territory, supra.* This being so, we need not now inquire whether the Rhea case is sound or not. We have shown that the doctrine on which the Finley Case rests is foreign to the doctrine involved in the case at bar, and, if this be true, then all cases, whether few or many, that are based on the principle decided in the Finley Case, can have no influence on the case at bar.

Under the view we have taken of the questions involved in the case at bar, we do not deem it necessary to discuss further the other cases that are cited by the respective counsel in support of their respective claims and theories. Counsel have not cited nor have we been able to find any case in which the precise question involved in the case at bar has been passed on. We have, therefore, determined the questions involved in accordance with fundamental principles as we understand them.

The judgment of the district court is therefore reversed, and the cause remanded to said court, with directions to enter a judgment upon the facts as stipulated, in favor of the appellant, appellant to recover costs.

STRAUP, C. J., and McCARTY, J., concur.