GEORGE W. MAURER V. STATE OF NEBRASKA, EX REL. GAGE COUNTY.

FILED FEBRUARY 4, 1904.   No. 13,326.

Mandamus: PUBLIC OFFICER: RETENTION OF MONEYS. When one, whose term as a public officer has expired, has made full, complete and truthful report of the public moneys which came into his hands during his incumbency, and of the disposition which he has made of them, but retains some of them under a claim of right, alleged to be unlawful, mandamus is not a proper action by which to litigate the claim.

ERROR to the district court for Gage county: CHARLES B. LETTON, JUDGE. *Reversed and dismissed.*

*R. W. Sabin, Griggs, Rinaker & Bibb* and *Hazlett & Jack,* for plaintiff in error.

*H. E. Sackett, H. E. Spafford* and *A. H. Babcock, contra.*

AMES, C.

This is a proceeding in error to reverse the judgment of the district court granting a peremptory writ of mandamus. The nature of the litigation is sufficiently disclosed by a stipulation contained in the record and which sets forth all the facts considered on the hearing as follows:

"It is hereby stipulated that for the purposes of the trial in this case, that in conjunction with the facts stated in the alternative writ and answer, the following facts are true:

"1st.   The respondent reserves the right to object to any evidence on the ground that the writ does not state facts sufficient to constitute a cause of action or to grant the relief prayed for therein.

"2d. It is stipulated that the respondent received as fees of the county treasurer's office of Gage county, Nebraska, for the two years of 1898 and 1899, the total sum of $7,736.92; and out of this amount he retained the sum of $6,000 as his personal salary, and the balance of $1,736.92 he credited to the general fund of the county, and out of the general fund of the county he paid the help of the office during said two years the sum of $3,125.68, and that said amount was actually paid said help, and that said help was necessary for the running of said office, and that said office was run in an economical manner. That said salary of $6,000 and said sum of $3,125.68 paid help, exceeded the fees and commissions of the said office of county treasurer for said two years and term the sum of $1,388.76.

"3d. It is stipulated that the respondent as such treasurer made quarterly statements to the county clerk of said county in accordance with the statute, and that twice a year in accordance with law he filed a semiannual settlement statement with said county clerk showing, among other things, the amounts paid, time, and the manner in which the clerks and assistants were paid, and that the county board of said county approved the acts, doings, reports and statements of said respondent and made the same a matter of record in their public meeting as a board, by adopting a report in substantially the following form:

" 'That said George W. Maurer, county treasurer, has reported all collections made, also canceled all vouchers on hand for disbursements made; he has satisfactorily accounted for all moneys due to balance accounts, either by cash on hand, or balances due in the various banks of deposit.' "

*Stipulation of Facts as to Second Term of 1900 and 1901.*

"1st. It is stipulated that the respondent received as fees and commissions of the county treasurer's office of Gage county, Nebraska, for the two years of 1900 and 1901,

the total sum of $8,426.04; and out of this amount he re-
tained the sum of $6,000 as his personal salary, and the
balance of $2,426.04 he credited to the general fund of the
county, and that out of the general fund of the county he
paid the help of the office, during said two years, the sum
of $4,362.64, and that said amount was actually paid said
help as authorized by the county board of said county,
and that said help was necessary for the running of said
office, and that said office was run in an economical man-
ner. That said salary of $6,000 and said sum of $4,362.64
paid said help, exceeded the fees and commissions of said
office of county treasurer for said two years and term by
the sum of $1,936.60.

"2d. It is stipulated that the respondent as such treas-
urer made quarterly statements to the county clerk of
said county in accordance with the statute, and that twice
a year in accordance with law he filed his semiannual
statements including vouchers, showing receipts and dis-
bursements of his office, and conditions of his office, and
how his salary, and how, and the amount and manner in
which the clerks and assistants of his office were paid,
with the county clerk of said county, and that he had a
semiannual settlement with the county board of said
county for the year of 1900, and that his accounts, state-
ments and reports were adopted and approved, and made
a matter of record by said board in open session in sub-
stantially the following language at the first and second
semiannual settlements:

" 'That said George W. Maurer, county treasurer, after
carefully checking up his office and reports, receipts and
disbursements together with the funds on hand, and in
the different county depositories, find the same correct,
and compares with the semiannual report of said George
W. Maurer.'

"3d. It is further stipulated that the county board did
not adopt the semiannual statements of the respondent
filed for the year of 1901, which last semiannual statement
was similar to the ones filed in the year 1900.

"4th. It is stipulated that as a part of the said sum of $1,936.60, paid out to clerks and assistants in said office in excess of fees and commissions for the years 1900 and 1901 of the second term, $657.56 were retained by said treasurer in the year 1901, and paid to said clerks and assistants.

"5th. It is further stipulated that on March 5, 1902, J. R. Plasters, the county clerk of Gage county, Nebraska, in conformity with instructions from the county board, made a demand on the respondent for the sum of $3,325.36, and on March 7, 1902, said respondent delivered to the relator the following communication in reply to said demand:

" 'To the County Board of Gage County, Nebraska, and to J. R. Plasters, County Clerk.

" 'GENTLEMEN: Your communication of the 5th of March, 1902, demanding of me the sum of $3,325.36 of moneys retained by me for service rendered by help in my office for the years 1898, 1899, 1900 and 1901 is received. In answer I will say there seems to be a difference of opinion between the board and myself as to the law in relation to the payment of help in the office of county treasurer which the county board has found necessary for the running of the office, and as there has been no more money retained by me than has actually been paid to the help in my office, and as I believe under the law I am entitled to retain, I must in justice to myself decline to comply with the request and demand of the board, as my reports and allowances have all been adopted save the last one of 1901. I will say, however, that I am prepared to meet any legal demand in this matter that it is found I may further owe.

" 'Very truly yours,        G. W. MAURER.' "

It distinctly appears from the foregoing recitals that the respondent during his incumbency of office made full,

complete and truthful report of all the public moneys which came into his hands, and of the disposition that he made of them. The only official delinquency with which he is charged is the unlawful retention of certain of such moneys after the expiration of his term of office. Is mandamus a proper remedy for their recovery? Section 646 of the code enacts that "This writ may not be issued in any case where there is a plain and adequate remedy in the ordinary course of the law." Is not this such a case? This court has held in several cases that a writ of mandamus may be issued after the expiration of the term of a public officer, to compel him to make report of the public moneys coming into his hands during his incumbency and, incidentally, to pay into the treasury sums so ascertained to be unlawfully retained by him. *State v. Shearer,* 29 Neb. 477; *State v. Boyd,* 49 Neb. 303; *State v. Russell,* 51 Neb. 774.

In a case where such a report has not been made and is requisite for the ascertainment of the amount of moneys, if any, in the hands of the alleged delinquent, there may be no "adequate remedy in the ordinary course of the law," but in a case in which such an uncertainty does not exist, and in which the amount of the money in the officer's hands, and the nature of the claim of right made by him to its retention, are distinctly and well known, we are unable to see why an ordinary suit at law is not a plain and adequate remedy. The above statute must be supposed to mean something, and we presume that among the objects of its enactment were to preserve to defendants their constitutional right to a trial by jury in the ordinary course of the common law, and to protect them from arbitrary arrests and penalties such as are the processes solely made use of to enforce obedience to peremptory writs of mandamus. The legislature has taken extreme pains to remove from our law and procedure the last vestiges of imprisonment for debt, and we think the court can not restore that remedy in direct violation of the statute mentioned.

It is recommended that the judgment of the district court be reversed and the action dismissed.

HASTINGS and OLDHAM, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the judgment of the district court be reversed and the action dismissed.

REVERSED.