SAMUEL W. HAYES,
MATTHEW J. KANE,        } Justices.
JOHN B. TURNER,
R. L. WILLIAMS,

---

GARDNER, *County Judge,* v. STATE *ex rel.* LANGSTON, *County Attorney.*

No. 1394.   Opinion Filed July 12, 1910.

(110 Pac. 749.)

**JUDGES—Compensation—Approval of Indian Land Conveyances.** The duties which the judge of the county court discharges and the services which he renders in approving conveyances of interest of fullblood Indian heirs in the lands of deceased allottees of the Five Civilized Tribes of Indians, as provided for under Act Cong. May 27, 1908, c. 199, sec. 9, 35 Stat. 315, are not duties imposed on nor services forming a part of the office, and salary received as compensation therefor does not constitute compensation for such extra official services, and prior to the passage of the county fee and salary law of the special session of the Legislature of Oklahoma of 1910 (Sess. Laws 1910, c. 69) such official was not required to account to and pay the money received therefor to his county.

(Syllabus by the Court.)

Vol. 27—1

*Error from District Court, Hughes County; John Caruthers, Judge.*

Action by the State, on the relation of W. P. Langston, County Attorney, against P. W. Gardner, County Judge. Judgment for plaintiff, and defendant brings error. Reversed and remanded, with instructions.

· *W. A. Ledbetter* and *Warren K. Snyder,* for plaintiff in error. —Citing *State ex rel. v. Hooker,* 26 Okla. 460, and *Eldridge v. Salt Lake County* (Utah) 106 Pac. 939.

*W. P. Langston,* County Attorney, for defendant in error.

DUNN, C. J.   This action presents error from the district court of Hughes county, and is brought for the purpose of requiring P. W. Gardner, judge of the county court of that county, to account to the board of county commissioners for all fees or money received by him for approving deeds provided for under section 9 of an act of Congress of May 27, 1908 (chapter 199, 35 Stat. 312), which provides that:

"The death of an allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of said allottee's land: Provided, that no conveyance of any interest of any fullblood Indian heir in such land shall be valid unless approved by the court having jurisdiction of the settlement of the estate of said deceased allottee."

The action is brought by W. P. Langston, as county attorney for that county, who contends that under the then existing fee and salary law of the state (Sess. Laws Okla. 1907-1908, p. 289) the county judge of Hughes county was entitled to receive, as full compensation for his services, the sum of $2,000 a year, and no more, and that under section 1 of article 5 of the same act he was required to keep an account of all fees for services rendered by him, and by section 2, *Id.,* to present regularly to the board of county commissioners of the county a detailed statement of all fees received by him during the preceding quarter, and by section 3, *Id.,* to pay the same into the county treasury, and that his salary was to be paid as were paid the salaries of county

attorneys for the several counties. Plaintiff in error was elected in the fall of 1907, and the federal act referred to was passed during his term of office.

There is no statute fixing the fees to be allowed for the services rendered thereunder nor providing the disposition thereof, and it is the contention of defendant in error that by virtue of the statute of the state above noted it was the duty of the county judge to report such fees, or money, as he received for approving the deeds mentioned to the county commissioners, and to pay the same into the county treasury, as belonging to Hughes county In support of this claim, counsel relies principally upon two cases, *Finley v. Territory of Oklahoma,* 12 Okla. 621, 73 Pac. 273, and *Rhea v. Board of County Commissioners,* 12 Idaho, 455, 88 Pac. 89. In the Finley case the plaintiff in error was probate judge of Kiowa county, while Oklahoma was a territory, and Congress, in addition to the jurisdiction granted by the Territorial Legislature, conferred upon him jurisdiction in townsite matters, and, on the question arising as to whether or not he should account for all fees received while acting under the authority so conferred, the court held this to be his duty. This case cannot be said to be controlling where the question arises in a state, however, for Congress had primary authority to fix the jurisdiction, duty and compensation of all territorial officers. It was stated by this court in the case of *Territory v. Long Bell Lumber Co. et al.,* 22 Okla. 890, 99 Pac. 911:

"Congress not only may abrogate the laws of any of the territories, but it may itself, if it chooses, legislate directly for the entire local government. It may make a valid act of the Legislature void, and a void act valid. It has complete legislative authority over the people inhabiting the territories and all of the departments of the territorial government. It may restrict all legislation for a territory to itself, or it may portion it out to subordinate bodies; but, when these bodies act, they act by virtue of federal authority, and their legislation is federal legislation applicable solely to their local conditions."

So the federal act under which the probate judge acted in

that case was absolutely controlling, superior in fact to any act of the local Legislature.

Where a similar question to the one at bar arose in Utah, the Supreme Court of the state, referring to the Finley case, in the case of *Eldridge v. Salt Lake County,* 106 Pac. 939, said:

"It was held that the duties imposed by the act of Congress were a part of the duties of the office of probate judge, and were compensated for by the salary paid to the judge. In classifying that case, it must be kept in mind that the territorial offices, as well as incumbents thereof, were always under the paramount control of Congress. In the very act under consideration in that case, Congress expressly ratified the acts of the territorial Legislature with regard to the powers and duties that had been imposed on the office of probate judge and on the judge himself, and, after such ratification, also made it the duty of probate judges to perform the services required by the act."

The other case cited, that of *Rhea v. Board of Com'rs,* 12 Idaho, 455, 88 Pac. 89, was predicated largely, if not wholly, upon the Finley case, and of it the Supreme Court of Utah, in the case from that court just above noted, said:

"The decision in the case of *Rhea v. Board of Com'rs.,* 12 Idaho, 455, 88 Pac. 89, is based entirely upon the authority of *Finley v. Territory, supra.* This being so, we need not now inquire whether the Rhea case is sound or not. We have shown that the doctrine on which the Finley case rests is foreign to the doctrine involved in the case at bar, and, if this be true, then all cases, whether few or many, that are based on the principle decided in the Finley case, can have no influence on the case at bar."

The logic and reasoning of the court in the case of *Eldridge v. Salt Lake County, supra,* appear to our minds to be sound, and are conclusive against the claim of defendant in error in the case at bar. In that case the appellant was clerk of the district court of Salt Lake county, Utah, taking his office January 1, 1907. Pursuant to provisions of an act of Congress of June 29, 1906 (chapter 3592, 34 Stat. 596 [U. S. Comp. St. Supp. 1909, p. 97]), he had accepted and retained one-half of the fees for services rendered in naturalizing aliens. Under the laws of the State of Utah, the appellant discharged the duties of clerk of

the district court and county clerk for that county, and under the
Constitution of the state (section 1 of article 21) it was pro-
vided that he should be paid a fixed and definite salary, and un-
der the statutes passed pursuant to that constitutional requirement
he was required to make a true and correct account of all the
fees collected and to pay the same into the county treasury. Un-
der the federal act, he was permitted to retain one-half of the
fees collected by him in the naturalization proceedings and was
required to account for the balance to the Bureau of Immigra-
tion and Naturalization; the money so collected to be deposited in
the treasury of the United States. On his refusal, action was
brought to compel him to account to the county for the fees re-
tained by him, and the question presented to the court, the same
as here, was whether or not appellant received such fees by vir-
tue of his office, so that the salary he received constituted com-
pensation for the services rendered, and necessitated his reporting
all such fees to the county, or whether he should be allowed to
retain them, and the court, in consideration of this proposition,
stated its conclusion in the syllabus as follows:

"The duties which the clerk of a state district court dis-
charges and the services which he renders in naturalization pro-
ceedings under the naturalization act (Act Cong. June 29, 1906,
c. 3592, 34 Stat. 596 [U. S. Comp. St. Supp. 1909, p. 97]) are
not duties imposed on nor services forming a part of the office,
and the salary received as compensation therefor does not consti-
tute compensation for extra official services, and he need not ac-
count therefor to his county, notwithstanding Const. art. 21, §§
1, 2, providing that officers shall be paid fixed salaries, and Comp.
Laws 1907, §§ 2057, 2062, fixing the salary of the clerk, which
shall constitute full compensation."

It will be noted in the case at bar that the statute under
which the plaintiff in error acted was not passed until after he
had been inducted into office and during the time he was serving
as judge of the county court. No statute of Oklahoma recog-
nized or required the performance of the service rendered by plain-
tiff in error thereunder, and there were no fixed fees therefor.

The Utah Supreme Court, speaking further of the liability

of the clerk to report to the county the fees collected by him under the naturalization act, says:

"The duties which appellant discharged and the services rendered by him by virtue of the act of Congress aforesaid are not duties which are imposed on nor services which are rendered as a part of the county office to which he was elected and of which he was the incumbent during the time in which the fees in question were earned and received by him. If this be so, then the salary which he received as compensation for discharging the duties of such county office was not intended to, and did not, constitute compensation for the extra official services he rendered as an agent of the general government in discharging the powers conferred on him by the act of Congress aforesaid and for which services the fees in question were allowed him by the national, and not by the state government."

Since this case was instituted, the Legislature of Oklahoma, at the special session, 1910 (Sess. Laws Okla. 1910, p. 129), passed a fee and salary act which provides for approving of conveyances of fullblood Indian heirs, and that the county judge shall charge and collect and account for the same, $5, and under the operation of this act the county judges of the state are required to report and pay into the county treasury the moneys received for such services.

The cause is, accordingly, reversed and remanded to the district court of Hughes county, with instructions to set aside the judgment heretofore rendered and enter one in accordance with this opinion.

All the Justices concur.