FEES
Until the Oklahoma Legislature may specifically otherwise provide, the statutory duties of the court clerk for which he receives state compensation, do not include the execution of passport applications. Therefore, for the extra official services which he provides as agent of the Federal Government in executing passport applications, he may retain such fees collected in connection therewith as permitted by Congressional Act, and use them to defer the expense of furnishing the records and performing the duties required; however, since the county does not derive any benefit from the execution of passports and collection of such fees, the expense of such services must not fall upon the county. Such expenses must he borne by the clerk and may be paid out of such fees. Should state materials, supplies, or the time of deputy court clerks be employed for the performance of services in connection with passport applications. then the fees collected pursuant thereto must be deposited in The Court Fund. The Attorney General has considered your request for an opinion wherein you ask the following question: "Is a court clerk required to deposit in the court fund, the execution fee he collects when an application for a passport is executed under oath before the court clerk?" The authority for charging an execution fee in connection with the issuance of passports is found in 8 U.S.C.A, 421 and 22 C.F.R., 51.61 which provides as follows: "Except as provided in Section 51.63A the fee for a U.S. passport is $10.00; (B) The execution fee for a U.S. passport is $3.00 which shall be remitted to the U.S. Treasury where an application is executed before a federal official, but which may be collected and retained by any state official before whom an application is executed; . . ." The answer to your question requires consideration, too, of two early Attorney General Opinions which have dealt with this same subject. Opinion of the Attorney General, dated June 3, 1941 to the Honorable Gerald Watts, County Attorney, Hobart, Oklahoma dealt with a similar situation wherein the question was asked as to whether or not a court clerk was entitled to retain any portion of fees collected by him in connection with naturalization proceedings. The following legal discussion therein is relevant to the instant issue. Pursuant to the Nationality Act of 1940, Section 301(b), Congress extended naturalization jurisdiction to the state courts. Section 337 of that Act prescribed the duties to be performed by the clerk of each court exercising jurisdiction in naturalization proceedings and Section 342 required that the clerk of every naturalization court should charge, collect, and account for fees collected pursuant to the performance of such duties. The Act further provided that one half of all fees must be turned over to the Federal Government but that the residue could be retained by such clerk for payment of additional expenses and additional clerical forces required by him to carry out such duties. Within the body of the Opinion was cited the Oklahoma Supreme Court case of Gardner, County Judge vs. State, ex rel. Langston, County Attorney, 27 Okl. 1, 110 P. 749 (1910), wherein for purposes of analogy, the Utah case of Eldridge v. Salt Lake City, 106 P. 939, dealing with the retention of naturalization fees by court clerks was cited. The Oklahoma Court stated in part: "The logic and reasoning of the court in the case of Eldridge v. Salt Lake County, supra, appear to our minds to be sound . . . Under the laws of the State of Utah, the appellant discharged the duties of clerk of the district court and county clerk for that county, and under the constitution of the state it was provided that he should be paid a fixed and definite salary, and under the statutes passed pursuant to that constitutional requirement he was required to make a true and correct account of all the fees collected by him in the naturalization proceedings and was required to account for the balance to the Bureau of Immigration and Naturalization; the money so collected to be deposited in the Treasury of the United States. On his refusal, action was brought to compel him to account to the county for the fees retained by him, and the question presented to the court, the same as here, was whether or not appellant received such fees by virtue of his office, so that the salary he received constituted compensation for the services rendered, and necessitated his reporting all such fees to the county, or whether he should be allowed to retain them, and the court in consideration of this proposition stated its conclusion in the syllabus as follows: "'The duties which the clerk of the state district court discharges and the services which he renders in naturalization proceedings under the naturalization act (Act Cong. June 29, 1906, c. 3592, 34 Stat. 696 U.S. Comp. St. Supp. 1909, p. 97 are not duties imposed on nor services forming a part of the office, and the salary received as compensation therefore does not constitute compensation for extra official services, and he need not account therefore to his county, notwithstanding Const. art. 21, 1, 2, providing that officers shall be paid fixed salaries and Comp. Laws 1907 2257, 2062, fixing the salary of the clerk, which shall constitute full compensation.' " "The Utah Supreme Court, speaking further of the liability of the clerk to report to the county the fees collected by him under the naturalization act, says: " 'The duties which appellant discharged and the services rendered by him by virtue of the act of Congress aforesaid are not duties which are imposed on nor services which are rendered as a part of the county office to which he was elected and of which he was the incumbent during the time in which the fees in question were earned and received by him. If this be so, then the salary which he received as compensation for discharging the duties of such county office was not intended to, and did not, constitute compensation for the extra official services he rendered as an agent of the general government in discharging the powers conferred on him by the act of Congress aforesaid and for which services the fees in question were allowed him by the national, and not by the state government.' " Emphasis added In summary, then, the June 3, 1941 Opinion of the Attorney General held that until the Legislature may otherwise provide, the court clerks are not required to pay over to the county that portion of the fees collected in naturalization proceedings which, by Congressional Act, they are permitted to retain. Further, since the county does not derive any benefit from the collection of such fees and the state statutes place no duties upon the court clerk in connection with such proceedings, the expense of furnishing the records and performing the duties required in connection with such naturalization proceedings should not fall upon the county. Such expenses should be borne by the clerk and may be paid out of such retained fees. In a later Opinion of the Attorney General, No. 64-190, dated March 25, 1964, the Attorney General was asked to reaffirm his holding in the opinion of June 3, 1941 and asked in addition thereto whether such decision would be applicable to fees collected in connection with services performed by court clerks in the issuance of passports. The opinion held in part: ". . . We find an almost identical situation in regard to fees for passport applications as we have in fees for naturalization proceedings. Congress has authorized both fees and we have no state statute imposing a duty on the court clerk in regard thereto or fixing fees in connection therewith. "It is the opinion of the Attorney General that the court clerk may retain fees received for the preparation of passport applications as well as those fees he is permitted to retain in naturalization proceedings." So far as we are able to ascertain, no statute has been enacted by the Legislature prior to, or since 1941 to date imposing any duties upon court clerks or fixing any fees in connection with naturalization proceedings. In 1968, the Oklahoma Legislature enacted 20 O.S. 1301 [20-1301] which provides as follows: "All fees, fines and forfeitures shall, when collected by the court clerk, be deposited by him in a fund in the county treasury designated (The Court Fund) and shall be used, from year to year, in deferring the expenses of holding court in said county . . ." Your question inquires as to whether the aforementioned statute changes the status of the law in regards to the retention of fees collected for passport applications by court clerks. We think not. Under 1941 law, the compensation of court clerks was subject to the following provision at 28 O.S. 1 [28-1] (1941). "Statutory allowances exclusive. — The officers and persons herein mentioned shall be entitled to receive for their services only the fees and compensation herein allowed, and no other, except as may be otherwise required by law." In addition, court clerks were subject to the following wording of 28 O.S. 37 [28-37] (1941): "Monthly accounting by court clerk and county clerk. — . . . The county clerk . . . shall file a verified report of the work of the preceding month . . . showing the total fees charged in each case and the total fees collected in each case, and shall pay all of such fees into the county treasury . . ." Emphasis added Therefore, notwithstanding Title 20 O.S. 1301 [20-1301] (1968), the rational used in the 1941 and 1964 opinions is still dispositive of the issue. It is clear that the Oklahoma Legislature, having knowledge of these legal constructions by the Attorney General has failed to enact since 1941 to date or prior thereto, any state statute prescribing duties for court clerks in connection with either naturalization or passport proceedings and has not changed the character of such extra official services so as to incorporate them into the regular duties of the office of Court Clerk. In that situation, it has been held that where the legislature adds to the duties of a county officer, he must perform same without any compensation in addition to that prescribed by statute, unless extra compensation be provided by law. Anderson v. Board of Commissioners of Grant County, 44 Okl. 164, 143 P. 1145. Therefore, it is clear that the requirements imposed upon court clerks by 20 O.S. 1301 [20-1301] refer only to those fees collected for services performed by them within the scope of their statutory duties for which they receive state compensation. Execution of passport applications is not a duty required of a court clerk pursuant to mandate of the Legislature, but a voluntary public service performed by him as an agent of the Federal Government for the public convenience in the procurance of passports. Therefore, we continue to adhere to the opinions of June 3, 1941 and No. 64-190, which allow court clerks to retain fees collected by them pursuant to services performed in connection with the execution of passports. Therefore, it is the opinion of the Attorney General that your question be answered as follows: Until the Oklahoma Legislature may specifically otherwise provide, the statutory duties of the court clerk for which he receives state compensation, do not include the execution of passport applications. Therefore, for the extra official services which he provides as agent of the Federal Government in executing passport applications, he may retain such fees collected in connection therewith as permitted by Congressional Act, and use them to defer the expense of furnishing the records and performing the duties required; however, since the county does not derive any benefit from the execution of passports and collection of such fees, the expense of such service, s must not fall upon the county. Such expenses must be borne by the clerk and may be paid out of such fees. Should state materials, supplies, or the time of deputy court clerks be employed for the performance of services in connection with passport applications, then the fees collected pursuant thereto must be deposited in The Court Fund. (CATHERINE GATCHELL NAIFEH) (ksg)